# PEOPLE OF THE VIRGIN ISLANDS IN THE INTEREST OF:
## J.S.I., a Minor

S. Ct. Crim. No. 2011-0049

Supreme Court of the Virgin Islands

November 18, 2011

JAMES BERNIER, JR., ESQ., Duensing, Casner, Dollison, & Fitzsimmons, St. Thomas, USVI, *Attorney for Appellant.*

JULIE ANN MEADE, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; SWAN, *Associate Justice.*

## OPINION OF THE COURT

(November 18, 2011)

HODGE, C.J. The Family Court transferred J.S.I, a minor, to the Criminal Division of the Superior Court for allegedly shooting two

individuals at a shopping mall on June 29, 2010. The People, however, failed to show that J.S.I. had been served with a copy of the summons, complaint, and motion to transfer prior to the transfer hearing. This deprived J.S.I. of due process of law. Accordingly, we vacate the Family Court's order transferring J.S.I. to the Criminal Division of the Superior Court and remand the matter back to the Family Court.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On June 29, 2010, there was a shooting that occurred in the parking lot of a shopping mall in St. Thomas. As a result of the shooting, Joseph Ferrari sustained a gunshot wound to his head and T.J., a minor, sustained a gunshot wound to his upper right thigh. Ferrari died as a result of injuries he received from the shooting. Following the shooting incident, Officer Sherise Thomas was dispatched to the mall to investigate. In the course of her investigation, she obtained video footage from the mall's security surveillance camera, which she testified showed J.S.I. apparently speaking to Ferrari at approximately 11:55 a.m. at one of the entrances to the mall. During this time J.S.I.'s attention was drawn to a safari bus traveling in front of the mall. While looking at the safari bus, J.S.I. threw his hands up in the air and T.J. exited the safari. J.S.I. then started walking towards T.J. with his right hand holding his waist on his right side. When J.S.I. reached T.J., the two individuals began arguing. This confrontation escalated into a physical altercation. Shortly after the physical altercation began, Officer Thomas testified that the video footage showed people in the vicinity, as well as T.J., falling to the ground and J.S.I. running away from the area.

Officer Thomas also testified that she interviewed a witness who said that she had seen the entire incident. The witness told Officer Thomas that she saw J.S.I. — whom she knew personally from attending Bertha C. Boschulte School — standing in front of the entrance to the mall, that she then saw T.J. exit the safari bus, and that J.S.I. approached T.J. and they engaged in a physical altercation. During this physical altercation, the witness stated that she saw J.S.I. retrieve a black handgun from his waist and begin shooting. The gunshots caused the witness to retreat and seek cover, but she stated that as she was retreating she saw T.J. and Ferrari fall to the ground.

Based on this information, J.S.I. was arrested and charged with acts which if committed by an adult would constitute two counts of first

degree assault, two counts of unauthorized use of a firearm during the commission of a first degree assault, two counts of third degree assault, two counts of unauthorized use of a firearm during the commission of a third degree assault, two counts of reckless endangerment in the first degree, first degree murder, attempted first degree murder, felony murder, attempted felony murder, and unlicensed possession of a firearm. On July 9, 2010, the People filed a motion to transfer J.S.I. to the Criminal Division of the Superior Court to be tried as an adult pursuant to title 5, section 2508(b)(4) of the Virgin Islands Code. A transfer hearing was subsequently held on March 29, 2011, and the Family Court issued an order on June 8, 2011 granting the People's motion. In that order, the Family Court found that J.S.I. was a minor at the time of the alleged shooting, that the offenses for which he is charged would be felonies if committed by an adult, and that there was probable cause to support each of the alleged offenses. Finally, the Family Court concluded that transferring J.S.I. to the Criminal Division of the Superior Court was mandatory under title 5, section 2508(b)(4) because the alleged offenses included first degree murder and unauthorized use of a firearm during the commission of a first degree assault. J.S.I. filed his timely notice of appeal on June 20, 2011.[1]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

According to title 4, section 32(a) of the Virgin Islands Code, this Court possesses jurisdiction "over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." "An order transferring a juvenile from the Family Division to the Criminal Division of the Superior Court is a final appealable order." *In the Interest of S.T.*, 51 V.I. 420, 422 (V.I. 2009) (citing 5 V.I.C. § 2508(d)).

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error.

---

[1] *See* V.I.S.CT.R. 5(d) ("Appeals in juvenile matters to the Supreme Court from the Superior Court may be taken as a matter of right. The time to appeal and related procedures are governed by Rule 5(b) . . . ."); V.I.S.CT.R. 5(b)(1) ("In a criminal case, a defendant shall file the notice of appeal in the Superior Court within fourteen days after the entry of . . . the judgment or order appealed from . . . .").

*St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In reviewing a decision to transfer a juvenile for prosecution as an adult, this Court exercises plenary review over the Family Court's application of legal precepts. *See In the Interest of J.P.*, 54 V.I. 580, 583 (V.I. 2011). All other issues are reviewed for abuse of discretion. *Id.*

## B. Adequacy of Service

J.S.I. argues that he was not served with the summons, complaint, and motion to transfer him to the Criminal Division of the Superior Court prior to the March 29, 2011 transfer hearing. He thus claims that he did not receive adequate notice and was deprived of due process of law.

In *In re Gault*, 387 U.S. 1, 33, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), the United States Supreme Court held that before a minor is deprived of his statutory right to be treated as a juvenile offender and transferred to be tried as an adult, he must be afforded the requirements of due process. Included among those requirements are notice and a hearing. *Id.* With respect to notice, the Supreme Court has specifically held that due process requires "that the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation." *Id.* Courts in this jurisdiction have found that 5 V.I.C. § 2509(a), which requires the summons, delinquent complaint, and motion to transfer to be "served as provided by law," implements the notice requirement guaranteed under the Constitution. *See, e.g., Government of V.I. ex rel. A.A.*, 931 F. Supp. 1247, 1252-53, 34 V.I. 158 (D.V.I. App. Div. 1996).

The record from the March 29, 2011 transfer hearing indicates that J.S.I.'s mother, Kelcey Trotman, was personally served with a summons, complaint, and motion to transfer on March 25, 2011. Further, Evril Powell Welcome, the Director of Treatment and Programs at the Youth Rehabilitation Center and custodian of the minor, was also personally served on March 25, 2011. However, Welcome testified that she never gave J.S.I. a copy of the summons, complaint, or motion to transfer that she received on March 25, 2011. The People attempted to cure this deficiency by taking a five minute recess during the transfer hearing, at which time J.S.I. was served with a copy of the summons, complaint, and motion to transfer. Following the recess, the Family Court

concluded that J.S.I. had been properly served. In addition to the personal service that occurred at the transfer hearing, the Family Court also noted that Welcome had testified that although she did not give J.S.I. the documents that were served on her on March 25, 2011, "these same documents had been served — had been given to [J.S.I.] previously." (J.A. 70.)

■ To begin, the personal service of the summons, complaint, and motion to transfer at the March 29, 2011 transfer hearing did not constitute adequate notice. "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." *In re Gault*, 387 U.S. at 33 (internal quotation marks omitted). *In re Gault*, the Supreme Court specifically held that providing notice to a minor or his parents at a hearing on the merits was not timely. *See id.* Accordingly, we conclude that providing J.S.I. with the summons, complaint, and motion to transfer during a five minute recess at the actual transfer hearing clearly did not give J.S.I. a reasonable opportunity to prepare for the hearing, and thus was not adequate notice.

The Family Court also found that although J.S.I. had not received a copy of the summons, complaint, and motion to transfer on March 25, 2011, he had nonetheless received adequate notice because Welcome had previously given him copies of the complaint and motion to transfer. In reaching this conclusion, the Family Court noted that "Welcome said these same documents had been served on [J.S.I.]. She said *I didn't give him the documents that I was served with yesterday, but these same documents had been served — had been given to him previously*." (J.A. 70.) The Family Court misconstrued Welcome's testimony. In response to being asked whether she knew if J.S.I. had "received the motion to transfer and the [] complaint and summons," Welcome responded: "The one that I received yesterday afternoon, he did not physically get a copy of it. I know that previously — it's not this exact one, but previously he has received a copy, but not this one with the summons dated for today's hearing." (J.A. 52.) In contrast to the Family Court's finding, at no point in her testimony did Welcome say that copies of the same complaint and motion to transfer that were served on her on March 25, 2011 had been

previously given to J.S.I.[2] *See United States v. Brandon P.*, 387 F.3d 969, 976 (9th Cir. 2004) (the decision to transfer a juvenile to be prosecuted as an adult is reviewed for abuse of discretion, and a court abuses its discretion when its findings are clearly erroneous); *United States v. Nelson*, 68 F.3d 583, 588 (2d Cir. 1995).

With the exception of Welcome's ambiguous statement, there is no indication in the record of when any prior service might have been made, or what documents had been previously served on J.S.I. Moreover, the People had the burden of establishing that J.S.I. had received these documents, yet they failed to ask Welcome any further questions that would clarify her statement regarding what documents J.S.I. had previously received and when he received them. Nor did the People present any other evidence indicating that J.S.I. had received copies of the complaint and motion to transfer. *See United States v. Doe*, 94 F.3d 532, 536 (9th Cir. 1996) ("The government has the burden of establishing that prosecution as an adult is warranted."). Before a minor is deprived of his statutory right to be treated as a juvenile offender and transferred to be tried as an adult, he must be afforded the requirements of due process. *See In re Gault*, 387 U.S. at 33. Because the determination of whether J.S.I. actually received copies of the complaint and motion to transfer prior to the March 29, 2011 transfer hearing implicates his constitutional right to due process of law, we are compelled to find Welcome's ambiguous statement insufficient to establish that J.S.I. actually received copies of the complaint and motion to transfer. Here, the Family Court could easily have continued this proceeding to afford J.S.I. a reasonable opportunity to prepare. The Family Court's failure to do so violated the United States Constitution and the Virgin Islands Code. Therefore, we vacate the Family Court's transfer order transferring J.S.I. to the Criminal Division of the Superior Court, and remand this matter to the Family Court for a legally sufficient transfer hearing.[3]

---

[2] Additionally, immediately before taking the five minute recess, the Family Court indicated that it was unclear whether J.S.I. had previously been provided with a copy of the complaint and motion to transfer.

[3] J.S.I. also argues that the People failed to establish that there was probable cause to believe that he committed the crimes of first degree murder and unauthorized use of a firearm during the commission of a first degree assault. Since J.S.I. did not receive adequate notice, we need not reach this issue at this time. We note, however, that in its transfer order, the Family Court

## III. CONCLUSION

The People failed to sufficiently establish that J.S.I. received copies of the summons, complaint, and motion to transfer prior to the March 29, 2011 transfer hearing, which implicates his constitutional right to due process of law. Therefore, we vacate the Family Court's transfer order transferring J.S.I. to the Criminal Division of the Superior Court.

---

failed to specify its reasons for finding probable cause. Instead, it merely concluded that "there is probable cause to support the alleged offenses." (J.A. 27.) In *A.A.*, the Appellate Division stated that:

> The [United States] Supreme Court has held that the appellate court ["]must have before it the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it assume that 'full investigation' has been made . . . . It is incumbent upon the [family court] to accompany its [transfer] order with a statement of the reasons or considerations therefor.["] The judge is thus required to state the reasons for transfer by making clear and specific findings that the necessary prerequisites for mandatory transfer outlined above and in subsection 2508(b) have been satisfied. Such a written articulation will provide a clear and discernable written record of the judge's findings for review on appeal.

*A.A.*, 931 F. Supp. at 1253-54 (footnote omitted, formatting omitted, citations omitted, third and fourth alterations in original) (quoting *Kent v. United States*, 383 U.S. 541, 561, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966)). We concur with this statement of the requirements, and in this case, without knowing what weight the Family Court gave to which pieces of evidence, it would be difficult, if not impossible, for this Court to review the Family Court's probable cause determination. *See id.* (noting that the trial court is required to perform a weighing of the evidence and make credibility determinations in determining probable cause).